Thank you. Good morning. May it please the Court. My name is Robert Muse, and it's my pleasure to represent the plaintiff appellant in this case, Mr. Ernesto Vasquez. It's my intention to attempt to reserve approximately three minutes for rebuttal time, if I may. This case presents an Establishment Clause challenge to an official government act which targeted a small cross for removal from the Los Angeles County seal, because that symbol itself was a Christian symbol. And so we've advanced the claim under the Establishment Clause based on that official act. And the posture of this case before this Court is obviously a dismissal of the complaint on essentially three grounds by the district court, the first being a standing, secondly, based on mootness grounds, and thirdly, based on the motion brought by the county that we failed to state a claim under the Establishment Clause. Now, because this case is in that particular posture, obviously, this Court must accept all those material allegations that we have advanced in the complaint as being true and all reasonable inferences drawn from them. So that complaint must be viewed in our favor when addressing each of these elements. Well, the facts have to be accepted as true. That's correct, Your Honor. When you say inferences, that doesn't necessarily mean all the conclusions that the complaint draws. Right. I understand that, Your Honor. That's exactly correct. I want to address the standing issue initially, because that's obviously a threshold question for this Court. Now, obviously, standing in Establishment Clause cases has been construed quite broadly by virtually every court that addresses Establishment Clause cases, and that a non-economic injury suffices to advance a claim under the Establishment Clause. And we believe that we have, in fact, alleged that. In the allegations in the complaint, we've alleged that Mr. Vasquez has direct personal and daily contact with the offending conduct such that he would alter his behavior to avoid the harmful injury associated with this particular policy. And even if you look at the Ellis case decided by this Court, in that case, a plaintiff challenged a county seal, and this Court found it sufficient that he curtailed his activities to lessen contact with the insignia in the display that he found offensive. And that itself was sufficient to confer a standing. And we've cited in our brief at least a half dozen other cases, some from this circuit and others, that, again, construe standing very broadly in the Establishment Clause case where that non-economic injury would suffice. But in addition, we've also alleged taxpayer standing in this case. And we believe that we have alleged sufficient facts to show a good-faith pocketbook action. And if you look at the Come Act case from out of this circuit in 1991, which was a challenge to the State statute that declared Good Friday to be a legal holiday, in that case, this Court held that the plaintiff had standing as a State and municipal taxpayer to challenge that declaration. And interestingly, in that case, the government alleged that there was no taxpayer standing just because it was a statute that just declared a national holiday. And this Court said, well, legislative enactments aren't the only things that can be brought by way of taxpayer challenge. Did Vasquez, did he allege direct contact with what he regarded as an offensive religious symbol? And, again, Your Honor, here's... Did he do that? Yes, there is. He's a municipal. He's a county employee. And this is sort of the two steps to the argument here. First is... I mean, everyone, you know, these vehicles go by and you see these seals. And, you know, I've lived in... I was born in this county. If you asked me what was on the seal before I got into this case, I really couldn't tell you, you know. I know it's circular. But... So we all see that. But was there something offensive about it that he had to, you know, he had to close his eyes or turn away or whatever? That's right. And that's where we realize that he altered his behavior as a result of that, to avoid contact with the... Now, see, the new seal, and this is what we've argued, in June of 2004, when the county adopted its official clause... Well, how did he modify his behavior? You avoid contact with it. Just like, I mean, there's a host of cases, Your Honor, that we've... That's what he did, huh? That's what he did and continues to do, Your Honor. And... And that's sufficient to confer... Does he allege that defendants spent municipal funds or county funds solely on removal of the cross? Your Honor, we've alleged that defendants, and we describe it as an anti-Christian policy, is funded by and will result in the expenditure of thousands of municipal interstate funds and tax dollars, causing further injury, direct injury to Plaintiff Vasquez. And we've alleged that he's a municipal taxpayer. So we have alleged the pocket, good faith pocketbook action for the taxpayer standing. And there is a direct expenditure associated with that June policy, and it's in the thousands of dollars. In fact, if we could have discovery, quite frankly, it's probably gone up to close to a million dollars for them to enforce that particular policy. And those are tax funds that are directly traceable to that particular policy, and that is sufficient to confer standing for municipal taxpayers under this circuit's case law. Well, let me ask you this. Is it your client's position that the cross on the old seal represented an historical and cultural symbol and didn't convey a religious message? And this is, and again, and I'm glad you brought this point up, Your Honor, because that, I think, was a sort of a straw man. You can answer that. Correct, Your Honor, and I want to. What we've alleged in the complaint is that the original seal with the cross did not convey an impermissible government-sponsored message of endorsement of religion. We never said that the cross itself was not a religious symbol. The government can. Did your client say that the cross was a historical and cultural symbol? Of the influence of Christianity in the county. It is a religious symbol, but it's one religion can be acknowledged in the historical context. But by targeting that symbol because it's a Christian symbol and removing it does, in fact, convey a message. And I think the tremendous public outcry and fervor that that action by the county created, I think, is demonstrative of the fact that, yes, those actions can, both the purpose and effect, can convey a message of disapproval of Christianity, which was well understood by countless numbers of citizens in this county. And, again, we're here on a dismissal of the complaint. In other words, your client's position is that the cross that was on the county seal, it was just an isolated cross. It wasn't on a building, was it? It was a small cross that was in the... Just there. It was a tiny cross in the same sphere where there was the Hollywood Bowl. Yeah, just there. Because there is a cross on the hill, a cross from the Hollywood Bowl. Right, and so it actually depicts the landscape. That's on private property, yeah. So he's not arguing that it's a historical and cultural symbol. And, again, Your Honor, it's a religious symbol, but it's permissible in that it depicts the historical and cultural influence of the church and the founding of the county. Right. So there are some instances where acknowledgement of religion, we have our national motto, in God we trust. Justice Breyer made very clear in the Van Norden case, when they upheld the display of the Ten Commandments, that the removal of that Ten Commandment display would create the social divisiveness that the Establishment Clause was designed to prohibit. I mean, that alone demonstrates that we have advanced at least a claim under the Establishment Clause. And if you look at this Circuit's decision, and I'm going to point out specifically American Family Association, as I cite in my brief, the Court said unequivocally the Establishment Clause, quote, applies not only to official condonement of a particular religion or religious belief, but also to official disapproval or hostility towards religion. And we argue that this policy in fact does that, both in its purpose and in effect, when you look at it from the perspective of a reasonable observer, conveys a message of hostility towards Christianity by targeting this small cross for removal from the seal because it's a Christian symbol. And again, it's quite obvious the amount of controversy that that decision had created. This cross had been part of the seal since 1957, very similar to the Ten Commandments display in Van Norden. It had been up for 40 years. So when you target that one symbol for removal because it's a Christian symbol, that act conveys a message. You made reference to a reasonable observer. I take it you understand that's the standard we're applying. Yes. And I have to tell you, that's where my problem with this case is. I have real difficulty understanding how this cross, which is justified in the old seal as a historic symbol, can be replaced with the outline of what appears to be a mission. And I understand the debate about that. But I have to say, when I looked at it, I said, gee, that's one of the California missions. How that can be taken to be an anti-Christian statement, I just don't see it. Your Honor, and again, the challenge is the policy that caused the change in the seal. And I think in some respects that this is an argument the district court made as to why the case was moved. But it doesn't move the case for a number of reasons. One is the city did not return the seal back to its original position. The fact that they changed. I'm not asking about mootness. Let me change the question, if you think that's what I'm asking about. I don't think the case is moot. I look at these. I look at the old seal. I look at the new seal. I don't perceive the anti-Christian message. I don't perceive and I don't understand how a reasonable observer can look at the new seal and say that's anti-Christian. Because the reasonable observer is not absent-minded and he has a reasonable memory. As the McCreary case. I look at the old seal and then look at the new one. And I don't see how a reasonable observer can say it's anti-Christian. They took out that small cross, which is part of a historical symbol of this county that represents the influence of Christianity in the founding of this county. And they took off that small cross because it was a Christian symbol. Every time you see that new seal, somebody who is aware of that policy, which you have to attribute that knowledge of that policy to the observer, and he sees that seal, it's a constant reminder that they took that cross off because it's a Christian symbol. And it's interesting that they put this sanitized box-shaped building. I know the district court described it as a church. How was Christianity the sole motivation for founding of the county? I'm not sure how that. If you came to Los Angeles County back in 1840, 1845 and all that, there'd be a lot of Asian people here, a lot of Chinese people here, a lot of Indian people here. There were people here from all over the world. So, I mean, certainly there's an influence, but can you really say the county was founded? I'm not sure I said it was founded exclusively. Certainly, I mean, look at the name of virtually every city in this area, whether you're talking about San Francisco or named after saints. I mean, I think you can't deny that there was an incredible influence of the Christian missions in here. Well, that's right. The missions were here. But, you know, the missions, sometimes their history wasn't that sparkling. Isn't that right? Your Honor, the fact remains that that cross was on the seal to demonstrate that influence. And, I mean, if you look at the fact that they would replace this, what the district court would describe as a Christian church, lends credence to the notion that you can have religious symbols that are part of the historical context without running afoul of the Establishment Clause. And I think what it shows is that they actually had a sham purpose to begin with to why they targeted this particular cross for removal. The replacement of what they replaced it with, unless they replaced it with the original seal, does not negate the message that was conveyed by that June 2004 policy to remove that cross because it's a Christian symbol. And that's what we're challenging. The subsequent symbol is now a physical manifestation, a symbolic representation of that particular policy of targeting that cross. And a reasonable observer who's aware of what that policy was would see that new seal and be reminded every time that they took that cross off because it was a Christian symbol. And that conveys a message that creates the social divisiveness, political divisiveness. I'm going to have to interrupt you because you keep going and you make it kind of hard to get a question in. Why wouldn't the observers say they took it off because it was a religious, not necessarily Christian, but religious symbol? I mean, I think in the same respect, that's problematic. Why? Why? Because the Supreme Court has said that you can't show disfavor to any particular religion. Suppose there was no cross there. Suppose the city of Pasadena has no cross or San Diego. There are missions in San Diego. No cross in San Diego and seal. They've got it on the hill there but not the seal. Can you force the city to express this historic value by making them put a cross in? No. So you're saying that we have to freeze people in amber. Whatever they did 100 years ago, they've got to keep doing because somebody may resent the change? I just can't follow that. Well, you've got to look at what the purpose of the change was. The purpose of the change was to take the cross off because they had this threatened lawsuit. Because it was a religious symbol. Exactly. Well, what's wrong with that? Why can't the county decide they want to avoid a lawsuit? It wasn't a question of – well, first of all, I think the fact that – I mean, first of all, because this is a dismissal and a complaint, you've got to give credit to what we've alleged and what the predominant purpose was. No. You've agreed that it's reasonable observer. And we don't have to think that you know what the reasonable observer would say. The courts are constantly dealing with this on a motion to dismiss. Well, if you're looking at what is the purpose. I mean, even if you look and assume that the – But, you know, that symbol was put there in 57, huh? That's right. Yeah, that's not – you know, that's not too long ago, 57. Maybe it is for you, but not for me. Seems to be kind of long ago for me, Your Honor. That's correct. Yesterday. But if you look at – It's not long ago compared to – it's not long ago compared to geologic time, but it's long ago compared to a lot of persons probably in the courtroom. Certainly to my time, Your Honor. I don't know. They look pretty old to me. But going to that question, and if you want to credit their purpose that they took it off because it's a religious symbol, it demonstrates that if they replace it with another religious symbol, it demonstrates that that was a sham purpose to begin with. They took that off because it was a specific symbol of Christianity. And I think that's a claim as we've alleged from the complaint. And the fact that they would say, well, look, we're taking this off because we want to avoid a lawsuit, so we're just going to replace it with another religious symbol, I mean, that doesn't make any sense. No, because you said it could be justified because it was a historic symbol. It was a historic symbol that's uniquely religious. It's a cross, for heaven's sakes. They replaced it with another historic symbol that has religious overtones. The missions weren't Buddhist, but is not an overt religious symbol. And if it's justified by being historic in the first place, I really don't understand what the problem is with regard to expressing an anti-religious sentiment if they replace it with another historic symbol with Christian implications. Because it reflects the original policy as stated before. It wasn't such that the seal was going to expire or that there was any discussion that they wanted to update the seal because it was outdated. There was nothing of that. The whole discussion surrounding that policy and the whole purpose for adopting that policy was to remove that cross because it's a Christian symbol. And I'm sure this Court is probably well aware of the tremendous public outcry that that created because the message conveyed by that was one that was unmistakable. It was one that was disapproval towards Christianity, and it was well understood by my client and by many others. And I think we've advanced the claim. Kennedy. What's the evidence of a tremendous public outcry? Well, again, Your Honor, if we can get to discovery, we can certainly better prove and get to the merits of the claim. Right now the question is whether or not we've advanced a cognizable claim under the Establishment Clause. And as I cited in my cases, we've done that. You're talking about tremendous public outcry. There has been, Your Honor. I mean, my understanding was the Board meetings addressing this issue were the most well attended of any meetings they've had, and I think in the history, because of this action. That doesn't mean there's a tremendous public outcry. That means that a lot of people who didn't like what was happening went down there. But, you know, this is a big county. How many people we got here? Twenty million? I don't know. But the fact remains, Your Honor, this was a message conveyed to my client. As we've alleged in the complaints, it's one that he understood as disapproval of his religious beliefs. It makes him feel like an outsider in the community, and it's one attributed to that policy, one attributed to the governmental action. What about people that respect other religious symbols? Does that make them feel as outsiders if the cross is there? Well, I know actually there's, and again, we're kind of going beyond some of the allegations in the complaint, but I know there's plenty of people of different religions who found this quite offensive as well, that they would target religion, people who weren't of the Christian faith. Because that's not our, we don't have, we have a history of acknowledgement of religion in our public life. We don't have a history of disapproval or showing hostility to religion in our public life. And I think people can understand that. And this was a plainly an act of the government that conveyed disapproval, and we've advanced a cognizant claim under the Establishment Clause based on that. Well, if you accept your premise, but I still have trouble. What makes it so plainly a statement of hostility? The decision not to continue to display a cross, how does that translate into hostility? I mean, it does, Your Honor. I mean, there's no basis for taking that cross off. The cross was plainly permissible because it was, in the historical context of that official seal, had been there since 1957, and then in June of 2004, they targeted that cross, take it off simply because it's a Christian symbol. It conveys a message of hostility to religion. I mean, I don't know how further to convey that to you, but that is a message that was well received by many, including my client, and that's the basis for his complaint. But your problem is you've got to show it's received by a reasonable observer. That's correct. I mean, I happen to be a Christian. I'm not offended by the fact they decided to put up a mission instead of a cross. I understand because I'm a lawyer the difficulties they faced if they were going to have a lawsuit thrown against them because there was a religious symbol there. I may not have made the same judgment, but I have difficulty understanding why the county is not allowed to make that judgment. And, again, it's what is the purpose and what is the effect of that action. It didn't arise because the seal was just going to expire on its own time. It wasn't some religiously neutral basis for them to take that action. And if you're going to be striking down nativity scenes and Ten Commandments displays and so forth, if the Establishment Clause, in fact, means what the courts say that it means, that it not only you can't approve of religion but you can't disapprove of religion, then this falls plainly within those parameters, I know. I've only got 30 minutes. We're abusing the time schedule today because you have the good fortune of having only the two cases scheduled. All the cases involve nativity scenes. I mean, most of them have been in place in those communities for a long, long time. Why don't you make the same conclusion? Because they've been there for a long time. The fact that people are offended by the removal of them means they have to stay there, that the cities in question can't take them away. And, Ken, it goes to what was the purpose, in effect, of their particular policy. If they've had a longstanding tradition of putting out certain religious symbols. Well, maybe the purpose here was, you know, the neutrality. And, again, Darren, the fact that they're. . . You know, we have. . . How do you reconcile all these with these various cases we've had involving crosses that have had to come down, crosses on public property? And, again, I think it goes to the fact. . . How do you reconcile those? Darren, I think it's quite simple, that we have a history. I mean, obviously we've got a case coming up Thursday addressing the crosses on public land. But we have a. . . Are you on that one, too? I am, Your Honor. We have a history of public acknowledgment of religion in the role of our public life. I mean, that's part of it. And look at Van Orden. But I'm talking about all the cross cases that we've had on public property. And the court has consistently ruled, consistent with the First Amendment, that they need to come down, you know. I mean, the one that's opposite Hollywood Bowl, well, that's on private property. So, you know, that's fine. So, anyway, it's tough issues, tough issues. Okay. Thank you, Your Honor. Appreciate your argument. May it please the Court. My name is Jennifer Lehman, representing the county. What this case really comes down to is the Board's discretion to redesign the seal and their discretion to choose what historical symbols they want to put on the seal. No person has the right to force their government to choose one particular history over another. And throughout the plaintiff's complaint, they refer to the cross as a historical and cultural symbol. Again, the county is not required to pick one history over another. The Board decided to replace the cross with a mission to symbolize the history of the missions in the county. And while plaintiff may dislike the mission, may find fault with the mission, may not like the artistic rendering of the mission, it's not his call. It's the Board of Supervisors' call. They have the discretion. And if we start opening the litigation floodgates. Stop you there. Make sure we're focusing on the right thing. You're not arguing, as I thought at times your brief was suggesting, that just because they're the county supervisors, they have discretion, period. You wouldn't argue that they could take a seal that had no religious symbols and suddenly decide today, you know, this needs some reference to our history, so we're going to stick in a cross or a Star of David or some other religious symbol that didn't have history being in the seal. I mean, what's the prospect for the county being able to get away with that today based on the discretion of the supervisors? Very slim for clearly established, for a clearly religious symbol. So you're not suggesting that the discretion of the supervisors trumps whatever establishment clause requirements there might be? I would agree. But according to the facts alleged by the plaintiff, this really isn't an establishment clause case because he's alleging the cross is only a historic symbol. If you accept the premise, and I was vigorous against the plaintiff. I'll be vigorous against you, too, because I'll flip it around. If you accept the premise alleged in the complaint, and we are at the motion to dismiss stage, that a reasonable observer would infer from the move from seal one to seal two a statement of hostility toward Christianity, doesn't plaintiff have a case? I don't think the reasonable observer would conclude that replacing a Christian cross with a Christian mission is hostility towards Christianity. So I'm focusing the question that way for exactly this reason. I'm trying to figure out what we're really talking about here and what I understand from the dialogue that we had with plaintiff's counsel and what I'm reaching for with you, does it come down to just that? Whether a reasonable observer would interpret this change or understand this change to reflect or express hostility toward Christianity. If you accept that the cross is not just a historical figure, then yes, I would say that it does come down to a reasonable observer. And I don't think that a reasonable observer, again, would conclude that replacing a Christian cross with a Christian mission shows hostility towards Christianity. Let me urge you to take the word Christian out as a modifier of mission, because yes, in fact, the missions were Christian. If you look at this, I mean, I've heard this characterized as a Taco Bell, too, so the observer has his own understanding as to whether it's Christian. But mission I will give you. I asked Mr. Mews, you know, why not? I'll ask you why not in the same way. Why wouldn't a reasonable observer? Plainly plaintiff inferred a statement of hostility. There was some public controversy. Judge Ferguson showed me the front page of the Daily News today, which has this case on the front page. It's not often we have cases that get reported on the front page before we've made a decision that's outraged the public. So what is it that leads you to say that a reasonable observer couldn't see this hostility in the change? It just can't. I mean, I know that his response is it can't. That's exactly the problem. That is exactly the problem I've had with this case, because I used the first person in expressing it before. I'll use this first person now. I mean, I can understand that argument. As it happens, I may not be personally offended, but I don't purport to be the reasonable observer all by myself. Maybe if the rest of the world discovers that I should be recognized that way, it's okay. But I'm not. And so we have an allegation made in the complaint at the stage of a motion to dismiss before there's been any submission of evidence or development of evidence. Is it appropriate for the Court, given that both sides are kind of stymied in trying to prove up a case now as to what a reasonable observer would believe, is it appropriate to dismiss it right now? Well, as you pointed out earlier, these cases are decided on 12Bs all the time. The Court is in the position to establish what the reasonable observer would observe. And in this case, we have differing views on what the reasonable observer would say. Our position is that the reasonable observer would not say that this is hostility towards Christianity. And in terms of the public outcry, I mean, I would say that their remedy is a political one, not a judicial one. If they don't like the way the supervisors are voting, then the polls will take care of that. Anyway, unless the Court has further questions, I will submit. Any questions, Judge Gould? I have no questions. Thank you. All right. Thank you. Well, I don't know what you're going to rebut, but we'll give you a minute. If I may, Your Honor, on the reasonable observer. And again, as Judge Clifton pointed out throughout the opposition in this, the county seems to be arguing that their discretionary acts are immune from constitutional scrutiny, which I think is clearly not the case. They're backed off of that. They're backed off of it, yeah. But with regard to the reasonable person, and again, if you look at you have to look at the history and I know this is very, the reasonable person, I understand it, has been criticized by many of the justices, and I know there's cases working their way up where they're going to call into question how do you apply this. We can't change that. I understand, but as it stands now, if you look at the history and the context of the policy and how it was enacted, I mean, that's as best as we can do. And as we've alleged, the policy here, and I know the attention always wants to focus on what was the new seal, but our challenge is to the policy adopted in June of 2004 that targeted the cross for removal because it's a Christian symbol. That's the policy that was adopted. A reasonable person would conclude that that disfavors religion. The policy was probably to bring the seal in line with the Establishment Clause. And, Judge, again, I think you're accrediting facts to the defendants that's not facts in this complaint. And then when you look at, but then even assuming if that was the case, but, again, that's not what's in the four corners of the complaint, that seal itself. We've had all these cases where we've held that a cross on public property violates the Establishment Clause. So here they've got it on a seal. You've got a small cross in a context. It makes a difference because the context, the physical setting of the display, is very important. I mean, that's what it often turns on. In fact, in Lynch v. Donnelly, the court said it's error to focus plainly on just the religious symbol in the context. It is error to do that. So, in effect, what they've done is actually done error by just focusing on the religious item in the display and discounting all the historical context associated with it. And if they're plainly ---- I just want to make sure I've got your point here, because I think it's, I haven't really focused on it quite the same way. Are you saying, in effect, and constantly emphasize the small cross, because we're not talking about a seal that consists maybe just of a big cross inside a circle and that's it, where the overwhelming predominant element of the, in this case, seal is simply a symbol which is universally recognized as being religious, possibly historic as well. You're trying to put it in context to suggest that's part of what would justify letting it stand. An establishment clause challenge against the seal would have a better chance of being successfully defended because the cross was modest in size in comparison with other parts. And it's also part of the landscape. It's part of the history. And plainly, after Van Orden, I think it's plainly defensible. And then it goes on further to show that if they're so concerned it's a religious symbol so we've got to take it off and then replace it with another religious symbol, it just shows that the sham purpose and that they targeted that cross because it was a cross and a symbol of Christianity. And that is where the message is conveyed by that policy enacted in June of 2004. So the other factor is, as we've alleged, granted, at the end of the day, they ended up taking off the goddess Pomona, but in the policy in 2004 and all discussion. In fact, the fact that they put a mission afterwards and then put this native Indian and replaced Pomona, the goddess, this polytheistic goddess, our argument is that that's just litigation strategy. And it demonstrates further a sham purpose. And, again, we're here on a motion to dismiss the complaint for failure to state a claim. And I think when you take those factors into account, the history and the context, Pomona was not targeted, this tiny cross, clearly constitutional in the context under our established law. To remove that and target that because it's a Christian symbol conveys an impermissible message. How many times in the past has the county changed its seal? I know that seal has been in place continuously since 1957. So I don't know what's prior to that. The county's been here 100 years before. L.A. County used to include Orange County. I think it's San Bernardino, too. Did you know that? I didn't, Your Honor, but I don't dispute that. I'm sure it's correct. It helps to know history firsthand. Yeah. That's right. Contemporary history. So I think in total, when you look at the history and the context and how this arose and the fact and all those facts associated with that policy during 2004, I think we've plainly alleged a claim under the Establishment Clause. We have standing. It's certainly not moot because the policy's been enacted. It's continued to be enacted. And we have standing based on, I think, plainly on the case law. And so the motion to dismiss and dismissing the complaint, I think, was error on the district court. Okay. Appreciate your argument on both sides. And we'll recess until 9 a.m. tomorrow morning. 9.30 a.m. tomorrow morning. Excuse me.
judges: Pregerson, Gould, Clifton